### No. 7955.

### MICHAEL TROENDLE vs. ONÉZIME DEBOUCHEL.

| | |
|---|---|
| 33 | 753 |
| 48 | 413 |
| 48 | 540 |
| 33 | 753 |
| 50 | 396 |
| 50 | 753 |

A mortgage creditor with the pact *De non alienando* may disregard the seizure of the mortgaged property made by a junior mortgagee, and proceed by seizure and sale in another court.

When the administrator of a Succession applies for an order of sale of property to pay debts, and annexes to his Petition a list of the debts to be paid, it is a sufficient acknowledgment of such debts to interrupt prescription.

The acknowledgment of a debt by the administrator of a Succession, so as to interrupt prescription, may be made in other ways than in the sacramental manner prescribed by Art. 985, C. P.

The mortgage creditor with the pact *De non alienando* may ignore subsequent transfers of the property and proceed *via executiva* against the original mortgagor; but, if he choose to sue such subsequent vendees, instead of the original mortgagor, he must proceed, as against third possessors, by the hypothecary action proper, and not *via executiva*.

APPEAL from the Sixth District Court for the parish of Orleans. *Rightor* J.

48

Troendle vs. DeBouchel.

### *B. C. Elliott* for Plaintiff and Appellee:

First—That the holder of a mortgage with the non-alienation clause can proceed directly against the property, making the third possessor defendant.]

Second—That when a succession is insolvent the demand and notice required by Act 69 are useless and not necessary, and the holder of mortgage containing the pact can proceed against the property in the hands of the actual owner and possessor *via executiva*.

Third—That the senior mortgage creditor is not bound or affected by any sale made by writ issued at the instance of a second mortgagee.

Fourth—That it is not necessary or sacramental that an acknowledgment of a debt by an executor should be made on the back of the note, or on a piece of paper annexed to it. Any writing in explicit terms recognizing the existence and validity of the debt, is sufficient.

Fifth—That, as between creditors, parol testimony can be received as to payment and renewals by the deceased, of a note, so as to take it out of prescription.

Sixth—That after a claim has been acknowledged, prescription is suspended so long as the mortgaged property remains in the possession of the executors, and the mortgage claim is not ignored.

### *J. Ad. Rozier* for Defendant and Appellant:

First—The executory proceedings must be instituted against the mortgagor, and not against a third possessor, notwithstanding the latter may be the owner. The pact *de non alienando* does not dispense a party from complying with the above.

Second—The price of the adjudication is within the control of the court that ordered the sale, and the distribution thereof can alone be passed upon by that court. All rights as to priority, privilege or mortgage, must be passed upon alone by that court.

Third—The purchaser takes the property free from encumbrances, and the creditors of the succession of Boutté must enforce their preferences on the proceeds as, if the sale had taken place in the Probate Court.

Fourth—The court rendering the judgment has the execution of it. C. P. 617.

Fifth—The executory proceedings should have been instituted against the executors of Boutté, Francis P. Boutté, deceased, being the maker of the note secured by mortgage, and he having executed the mortgage.

Seventh—The executors never did acknowledge the demand of the plaintiff. The attempt is made in the account filed June 4th, 1879, but at that time prescription had taken place. One of the accounts never was filed or used—it is of no validity.

Eighth—The acknowledgments of Troendle, plaintiff, on the back of the note cannot interrupt prescription. No parol testimony could be introduced. C. C. 2278.

---

The opinion of the Court was delivered by

Poché, J.   On the 27th of August, 1866, F. P. Boutté, who owned one undivided third of a piece of property on the corner of Commercial Alley and St. Charles street, in this city, mortgaged the same to secure a note of $1200, which is now held by plaintiff, and on which he has sued out executory process against the mortgaged premises, now in the possession of the defendant.

Subsequently, Boutté acquired another third of the same property, and, in August, 1869, he mortgaged his two-thirds of that property in favor of C. F. Berens.

Boutté died in February, 1875, and S. P. DeBlanc and H. Boutté were qualified as executors of his estate.

In March, 1879, under a foreclosure of the Berens mortgage, the two-thirds of the property were adjudicated to defendant, for $10,500 cash. In that case executory process had issued from the Fourth District Court, parish of Orleans, and, on appeal, the suit was decided in this Court, and is reported in 31 An., page 112.

Now, in March, 1880, the present suit was begun by plaintiff, who issued executory process on the mortgage of 1866, against the defendant, DeBouchel, actual possessor of the property mortgaged to secure the note held by plaintiff.

His proceedings were enjoined by defendant, who relies upon the following defense:

1st. That the Sixth District Court had no jurisdiction in the premises, for the reason that the property having been seized and sold in the suit of Berens vs. Executors of Boutté in the Fourth District Court, and the proceeds of said sale being under the control of said Fourth District Court, plaintiff should have gone into that court and sought therein to reach said funds to which his mortgage, if he had any, had been transferred.

2d. That plaintiff's claim was barred by the prescription of five years.

3d. That plaintiff could not proceed directly against the third possessor by executory process, but should have resorted to the hypothecary action.

First—Plaintiff, holding a mortgage, with the clause *de non alienando*, superior in rank to the Berens mortgage, under which defendant had become the adjudicatee, had the undoubted right, under our jurisprudence, to proceed, in any competent court, to enforce his mortgage rights. His mortgagor, Boutté, could perform no act impairing his rights under the act of 1866, and the rights acquired by Berens under and by virtue of his mortgage of 1869, were secondary to his; plaintiff was not a party to the executory process instituted by Berens, and his rights could not be modified, restricted or in any way affected by any act or proceeding performed or instituted by Berens, and nothing could compel him to seek redress before the forum selected by Berens for the vindication of his rights.

It was, therefore, competent for him to proceed before any court vested with jurisdiction over matters similar to his claim, and the Sixth District Court having concurrent jurisdiction with the Fourth, was clearly vested with jurisdiction over the subject-matter. Defendant urges that the executors of the Boutté estate, having taken a rule to transfer to the Probate Court the proceeds of the sale realized under Berens' execution, and the Fourth Court having refused the order of transfer, plaintiff is concluded by such ruling, which is *res adjudicata* as to him. We cannot perceive how such a ruling can affect the rights of the holder of

the ranking mortgage, and much less how such a creditor can be affected by a judgment in a proceeding to which he was no party. He was not even compelled to litigate his rights in the Probate Court.

Second—On the plea of prescription, plaintiff's note is prescribed upon its face, but he relies upon several acts interrupting said prescription.

1st. A renewal in writing endorsed on said note, and signed by Boutté, on the 27th of August, 1870, under which the note was renewed to the 27th of August, 1871, by virtue of which prescription was interrupted to the 27th of August, 1876.

2d. By a petition, filed by the executors on the 27th of March, 1875, for the sale of the succession property in order to pay debts, a list of which was annexed to said petition, which list contained and recognized plaintiff's claim and mortgage.

Plaintiff also relies upon an account of administration, drawn and signed by the executors, under date of 23d of February, 1876, and on a similar account, under date of June 4th, 1879, in both of which plaintiff's claim and his mortgage were specifically recognized. But, concluding that the two first grounds of interruption of prescription urged by him are sufficient to sanction his plea, we shall not discuss the two others, nor the numerous bills of exception taken to the admission and to the rejection of the testimony offered in support thereof.

From an inspection of the original note which was sent up with the record, by comparing the signature of Boutté on the face of the note, and from the original endorsement, and considering the testimony of witnesses who were familiar with his signature, we are satisfied, beyond doubt, that F. P. Boutté did sign the endorsed renewal of the note dated August 27th, 1870, by which the maturity of the note was postponed to August 27th, 1871, and that the note was thereby kept alive until the 27th of August, 1876. The record further shows that, on the 27th of March, 1875, the executors presented to the Probate Court a petition for an order of sale of the succession property for the purpose of paying the debts of the succession, which were enumerated and described in a list of debts of the succession, annexed to their petition, and that on said list the executors described and recognized the debt of plaintiff now sued on.

It appears that this list has since been mislaid, or lost, and could not be produced on the trial of this case. Whereupon plaintiff offered to prove the previous existence and the subsequent loss of the same by the testimony of a deputy clerk who had seen it in the record and filed with the petition; by the testimony of the attorney who had drawn and presented it, and by that of the executors who had signed the same. Defendant objected to that testimony, on the ground that no other court but the Probate Court, where the list had been presented and filed, could

inquire into the loss of the same. The objection is manifestly untenable and at variance with the well established rules of evidence, under which a party, after properly accounting for the loss of documents or other primary evidence, is allowed to introduce secondary evidence. The fact that a document is filed in and belongs to a court, cannot deprive another court from using the same document or a copy of the same in evidence; and it follows that any other court can investigate the loss of such document, as a step towards the introduction of testimony to prove its contents. Defendant further objected to the introduction of the document itself, or of the proof of its contents, because the administrator or executor had not recognized plaintiff's debt in accordance with the provisions of Article 985 of the Code of Practice, requiring the written declaration to be made on the instrument evidencing the claim, and to submit the same to the judge. We do not understand these provisions to apply to acts of interruption of prescription, which are regulated by the general laws of prescription.

In the case of Berens vs. Executors of Boutté, 31 An. 112, our immediate predecessors gave effect to this identical list of debts, as an absolute interruption of prescription. See, also, 29 An. 493.

Parol testimony was, therefore, properly admitted to show the existence and the subsequent loss of the list of debts presented by the executors on March 27th, 1875; and parol testimony was also properly admitted to show the contents of the missing document. And from that evidence we are fully satisfied that plaintiff's claim with mortgage was therein fully set forth, and specifically recognized, thus operating a legal interruption of prescription, by virtue of which plaintiff's claim was kept alive until the 27th of March, 1880. 16 An. 261; 23 An. 184, 228; 30 An. 858.

Now, plaintiff's petition for executory process having been filed on the 6th of March, 1880, prescription had not yet acquired, and the plea must, therefore, be overruled.

The record further shows that plaintiff's mortgage was duly inscribed in the mortgage office, and reinscribed within two years, on the 24th of August, 1876. Defendant objected to the introduction of the Recorder's certificate of reinscription on the ground, that the reinscription must be proven by a copy of the full entry. The Recorder's certificate shows that the reinscription was made in the same manner as the first inscription. It was properly admitted, and it made full proof of the reinscription.

If defendant suspected that the certificate was incorrect or untrue, it was his right to have introduced evidence in rebuttal, or proven the incorrectness or untruth of the certificate.

Third—The third ground of defendant's injunction is levelled at the right of plaintiff to proceed summarily against him, in thus resorting to the hypothecary action.

Plaintiff holds a mortgage with the pact *de non alienando,* and antecedent in date and, therefore, superior in rank, in so far as the original share of Boutté in the property is concerned, to the mortgage granted to Berens, in the foreclosure of which defendant became the adjudicatee of two-thirds of the property, including the portion which was burdened by plaintiff's ranking mortgage.

Under the plain and unambiguous provisions of our Code of Practice, Article 683, the purchaser acquired the property *cum onere,* and was entitled to retain in his hands the amount of the pre-existing and ranking mortgage.

The rights of plaintiff to claim his security on the property specially mortgaged in his favor cannot be jeopardized or affected by a sale under a mortgage or judgment of inferior rank. The defendant urges that he has paid, or at least secured, the full price of his adjudication, the proceeds of which are under the control of, and under discussion in, the Fourth District Court.

But, under the law, plaintiff, as ranking mortgagee, can ignore such adjudication and treat it as a nullity, for, under the Code of Practice, the purchaser was to have been informed of the pre-existing mortgage, and required to have provided for it, in default of which the sale was null and void, as being made in violation of a positive prohibitory law. In that case he could have proceeded directly against his mortgagor or his legal representatives, without warning or notice to the adjudicatee; or, he may elect, as he seems to have done in this case, to treat the adjudicatee as a third possessor who has assumed his mortgage, and *quoad* his claim, has assumed all the obligations, and taken the place of his original mortgagor, and to proceed against him *via executiva.*

This rule of law has been expounded and consecrated in an unbroken line of decisions of this Court, and at this stage of our jurisprudence can no longer be considered as a subject of discussion. 3 An. 543; 12 An. 148; 14 An. 149; 19 An. 125; 27 An. 60.

The views which we have herein expressed, virtually dispose of the numerous bills of exception taken by both parties during the progress of the trial in the District Court, and, for the reasons which we have considered, we conclude that the judge *a quo* was correct in dissolving defendant's injunction. But we notice that he condemns the principal and his surety on the injunction bond to pay damages in the sum of one hundred and fifty dollars; and we shall amend his judgment in that particular, reserving the right of plaintiff to sue for damages in a separate action on the bond.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be amended in so far as it allows damages on the injunction bond; and that the rights of plaintiff to sue for damages on said bond in

a separate action be reserved; and that said judgment be affirmed in all other respects, defendant to pay costs of the lower court, and plaintiff to pay the costs of appeal.

Chief Justice Bermudez, having been of counsel in this case, recuses himself.

## ON REHEARING.

The opinion of the Court was delivered by

Fenner, J. After a thorough re-examination of this case, we find ourselves compelled to reverse our former conclusions, as to the right of plaintiff to proceed *via executiva* against the defendant directly, the latter not being the original mortgagor of plaintiff, and having never conventionally assumed the mortgage, but being only a purchaser of the property mortgaged at judicial sale.

This point did not command as careful consideration in our original opinion, as it would have done, had it not been treated by counsel on both sides, in their first argument, as one of minor importance.

Although, under Articles 679 and 706 of the Code of Practice, the sale to the defendant transferred the property to him, subject to plaintiff's mortgage, which primed that of the seizing creditor, and, although the mortgage of plaintiff contains the pact *de non alienando*, we can find no warrant for allowing any other hypothecary action against the defendant, than the hypothecary action *proper*. Such is the undoubted import of Article 709 C. P., which declares that "the hypothecary action lies against the purchaser of a property seized, which is subject to privileges and mortgages, in favor of such creditors as have said privileges and mortgages, *in the same manner and under the same rules and restrictions as are applicable to a third possessor of mortgaged property.*"

Plaintiff's counsel has urged with great earnestness, and we concede, that the term "hypothecary action" is generic and embraces as well executory proceedings as the hypothecary action *proper*. But the last phrase of the Article 769, taken in connection with Articles 68 *et seq.*, conclusively shows that the hypothecary action *proper* is alone referred to. No decision of this Court has ever, to our knowledge, held otherwise.

It is undoubtedly true that plaintiff holding a mortgage importing confession of judgment and containing the non-alienation pact, cannot, by any sale, conventional or judicial, to which he was not a party, be deprived of his right to executory process; but he must exercise that right contradictorily with his original mortgagor in the mode prescribed by law, and not directly against the defendant purchaser, who, by the very terms of the law, can only be pursued "in the same manner and under the same rules and restrictions as are applicable to a third pos-

sessor of a mortgaged property." What this " manner " and these " rules and restrictions " are, had been expressly defined by the previous Article 68 and following.

Our conclusions on this question necessitate an entire change of our decree.

It is, therefore, ordered that our former decree herein be annulled and set aside; and it is now ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed; and that there be judgment in favor of defendant and against the plaintiff herein, maintaining the exception to the mode of proceeding, and, on that ground, perpetuating the injunction issued herein, plaintiff to pay the costs of the lower court and of this appeal.

The Chief Justice recuses himself, having been of counsel.